Lewis **EGGERT**, Plaintiff,

v.

**TUCKERTON VOLUNTEER FIRE COMPANY NO. 1; Thomas Hewitt; Tom McAndrew; Jim Mathis; Tom Hooper; John Constantine, Defendants.**

Civil No. 94–4254 (GEB).

United States District Court,
D. New Jersey.

Sept. 4, 1996.

Justin Terence Loughrey of Tomar, Simonoff, Adourian & O'Brien, for plaintiff.

Jerry J. Dasti of Dasti, Murphy & Wellerson, Forked River, NJ, for defendants.

## MEMORANDUM OPINION

BROWN, District Judge.

This matter comes before the Court on the plaintiff's and defendants' cross-motions for summary judgment pursuant to FED.R.CIV.P. 56. Plaintiff also moves for a continuance pending discovery as to defendants' motion for summary judgment, pursuant to FED. R.CIV.P. 56(f). For the reasons set forth in this Memorandum Opinion, the Court will

grant in part and deny in part defendants' summary judgment motion, grant in part and deny in part plaintiff's summary judgment motion, and deny as moot plaintiff's motion for a continuance.

## I. BACKGROUND

Plaintiff filed this action on August 31, 1994, seeking relief pursuant to 42 U.S.C. § 1983 and the New Jersey Tort Claims Act against defendants Tuckerton Volunteer Fire Company No. 1 ("TVFC"), Thomas Hewitt (Chief of TVFC), Thomas McAndrew (Assistant Chief of TVFC), James Mathis (Captain of TVFC), Thomas Hooper (Lieutenant of TVFC) and John Constantine (President of TVFC). Plaintiff seeks to hold defendants Hewitt, McAndrew, Mathis, Hooper and Constantine liable in their official and individual capacities.

The facts relevant to these motions are, for the most part, not in dispute. Plaintiff has been a member of the TVFC since March, 1973, and was its chief in 1980 and from 1985 to 1987. Affidavit of Lewis Eggert ("Eggert Aff.") ¶¶ 2, 7. At a Tuckerton Borough Council Meeting in December, 1993, plaintiff complained that other TVFC members brought non-members in response to calls for assistance and that TVFC should not respond to out-of-town fires because other fire departments were closer. *Id.* ¶ 12.

On January 2, 1994, TVFC (including plaintiff) responded to a call for assistance from a house in Mystic Island, New Jersey pursuant to an agreement between Tuckerton and Mystic Island. *Id.* ¶ 13. Two people were trapped inside the burning house, but TVFC could rescue only one of them. *Id.* Consequently, a three-year-old child died in the blaze. *Id. See also* Defendants' Brief in Support of Summary Judgment at 3.

Shortly thereafter, plaintiff wrote a letter to the editor of the *Tuckerton Beacon* which apparently pointed to several shortcomings in the rescue efforts during the January 2, 1994 fire and asserted that a better response by TVFC might have saved the child's life.[1] Eggert Aff. ¶ 14; Complaint ¶ 9. The letter

was published in the January 13, 1994 edition of the *Tuckerton Beacon. Id.*

Plaintiff claims that on January 17, 1994, he learned that he had been banned from responding to fires. *Id.* ¶ 15. Plaintiff alleges that following a meeting on March 1, 1994 regarding allegations that plaintiff had been delinquent and had not attended meetings, and a discussion among the individual defendants, Chief Hewitt announced that plaintiff had been banned from responding to calls for assistance. *Id.* ¶ 17. Plaintiff also alleges that at a TVFC monthly meeting on July 5, 1994, he requested his fire gear, which he needed to attend fires and participate in drills, but was told that he had been banned from fires and drills. *Id.* ¶ 18. Although plaintiff's affidavit does not mention expulsion, the Complaint and plaintiff's brief in opposition to summary judgment allege that TVFC expelled him on July 4, 1995. Complaint ¶ 10; Plaintiff's Brief in Opposition to Summary Judgment at 5.

Defendants do not deny banning plaintiff from responding to emergency calls and drills, but aver that he has not been expelled from TVFC. Certification of John Constantine ("Constantine Certif.") ¶ 7 ("Plaintiff has never been expelled from the [TVFC]. In fact, forwarded correspondence to Plaintiff's attorney dated May 27, 1994 indicating [sic] his client was not expelled and was a member of the Company. Moreover, Plaintiff was told orally that he was not expelled from the Company.").

Plaintiff claims that the ban or expulsion violates his First Amendment rights to free speech and to peaceably assemble, his Fourteenth Amendment rights to due process and equal protection, and his right under the New Jersey Constitution to free expression. Eggert Aff. ¶¶ 19–20. The Complaint sets forth five causes of action. Count I seeks relief pursuant to 42 U.S.C. § 1981, § 1983 and § 1985 for violations of plaintiff's right to free speech and due process. Complaint ¶¶ 11–12. Count II alleges that TVFC has violated the First and Fourteenth Amendments by applying an unconstitutional custom or policy that fails to warn of what activity is prohibited and that, in any event,

---

1. The parties have not provided a copy of the article.

the policy pursuant to which they banned/expelled plaintiff is an unconstitutional prior restraint or means of censorship. *Id.* ¶¶ 14–16. Count III alleges that defendants have deprived plaintiff of his rights to free expression, free assembly and due process under the New Jersey Constitution. *Id.* ¶ 18. Count IV complains that defendants conspired to deprive plaintiff of his constitutional rights, evidently seeking relief under state law rather than 42 U.S.C. § 1985. *Id.* ¶ 20. Count V seeks relief under state tort law, alleging that defendants' acts have caused plaintiff "mental and emotional distress and anguish, humiliation, embarrassment, shock and nervousness." *Id.* ¶ 22. Plaintiff seeks compensatory and punitive damages, a declaration that TVFC's policies or customs are unconstitutional, an injunction prohibiting defendants from enforcing those policies, and attorneys' fees.

■ Defendants now move for summary judgment. They argue first that plaintiff cannot seek relief against them pursuant to 42 U.S.C. § 1983 because they are not state actors.[2] They also contend that plaintiff's state common law claim in Count V must be dismissed because plaintiff did not comply with the administrative provisions of the New Jersey Tort Claims Act, N.J.S.A. 59:1–1 *et seq.*, before filing suit. Plaintiff also moves for summary judgment as to two issues: (1) whether defendants were state actors; and (2) whether plaintiff was expelled from the TVFC.[3]

## II. DISCUSSION

### A. STANDARDS FOR SUMMARY JUDGMENT

■ Summary judgment may be granted only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In a summary judgment motion, the non-moving party receives the benefit of all reasonable doubts and any inferences drawn from the underlying facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). If the non-moving party bears the burden of proof at trial as to a dispositive issue, Rule 56(e) requires him to go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *Schoch v. First Fidelity Bancorporation,* 912 F.2d 654, 657 (3d Cir.1990). Issues of material fact are genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

### B. THE EXISTENCE OF STATE ACTION

#### 1. *Whether Defendants May Be Considered State Actors*

Section 1983 creates a cause of action against any person who, acting under color of

---

2. The Court need not decide whether an absence of state action would also compel dismissal of plaintiff's § 1981 and § 1985 claims under Counts I and II. For example, it is unclear whether plaintiff also alleges a private conspiracy under § 1985(3). Indeed, the Complaint does not plead a right to recovery under either statute, but instead amorphously refers to a conspiracy in Count IV, which apparently is a state law claim. Complaint ¶ 20. In any event, it is clear that his claims under § 1981 and § 1985 are meritless and must be dismissed.

The plain language of section 1981 renders clear Congress's intent that the statute protect citizens' enjoyment of certain rights without discrimination against their race, religion or color. 42 U.S.C. § 1981(a). It is wholly inapplicable absent an allegation that state action has deprived an individual of a constitutional right because of a protected characteristic. *See, e.g., Wiggins v. Philip Morris, Inc.,* 853 F.Supp. 470

(D.D.C.1994). There is no allegation of discriminatory animus here.

Plaintiff's claim under § 1985 must also be dismissed because, whether construed to allege a conspiracy by TVFC and the individual defendants acting in their official capacities or a private conspiracy among the individual defendants, it again fails to allege discriminatory animus based on race or some other protected characteristic. *See Bray v. Alexandria Women's Health Clinic,* 506 U.S. 263, 113 S.Ct. 753, 122 L.Ed.2d 34 (1993) (quoting *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971); *United Broth. of Carpenters and Joiners of America, Local 610 v. Scott,* 463 U.S. 825, 833, 103 S.Ct. 3352, 3358–59, 77 L.Ed.2d 1049 (1983)).

3. Plaintiff also seeks a continuance under FED. R.CIV.P. 56(f). For the reasons set forth *infra,* the Court will deny that motion as moot.

state law, abridges rights created by the Constitution and laws of the United States. Specifically, the text of this statute provides in pertinent part as follows:

Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983.

■ It is therefore clear that relief under § 1983 is unavailable in the absence of state action or action undertaken by an individual under color of state law. *Rendell–Baker v. Kohn*, 457 U.S. 830, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982); *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974); *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); *The Civil Rights Cases*, 109 U.S. 3, 3 S.Ct. 18, 27 L.Ed. 835 (1883). *See also United States v. Price*, 383 U.S. 787, 794 n. 7, 86 S.Ct. 1152, 1157 n. 7, 16 L.Ed.2d 267 (1966) ("In cases under § 1983, 'under color' of law has consistently been treated as the same thing as the 'state action' requirement under the Fourteenth Amendment."). Thus, "at base, 'constitutional standards are invoked only when it can be said that the [government] is *responsible* for the specific conduct of which plaintiff complains.'" *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 632, 111 S.Ct. 2077, 2089, 114 L.Ed.2d 660 (1991) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004, 102 S.Ct. 2777, 2786, 73 L.Ed.2d 534 (1982)) (emphasis in original). The applicable standard in discerning the existence of state action is whether "there is a sufficiently close nexus between the State and the challenged action of [TVFC and the individual defendants] so that the action of the latter may be fairly treated as that of the State itself." *Blum*, 457 U.S. at 1004, 102 S.Ct. at 2786 (internal citation omitted). *See also Mark v. Borough of Hatboro*, 51 F.3d 1137,

1141–42 (3d Cir.1995). This question presents an issue of fact. *Mark*, 51 F.3d at 1144 (citations omitted).

As the Third Circuit explained in *Mark*, the Supreme Court has employed three discrete tests to resolve this issue. *Id.* at 1142–44. The first standard asks whether "the private entity has exercised powers that are traditionally the exclusive prerogative of the state." *Blum*, 457 U.S. at 1005, 102 S.Ct. at 2786. Although earlier decisions applied this test somewhat liberally, *see, e.g., Marsh v. Alabama*, 326 U.S. 501, 507, 66 S.Ct. 276, 279, 90 L.Ed. 265 (1946) (holding that town owned by private company performs public function and was state actor), the Supreme Court has more recently construed this test more narrowly by emphasizing the "exclusivity" aspect of the test. *See Mark*, 51 F.3d at 1142 (citing *Rendell–Baker*, 457 U.S. at 842, 102 S.Ct. at 2771–72 (holding that private entity engaged in educating maladjusted students did not perform exclusively public function because state's legislative policy choice to fund the school did not make the services "the exclusive province of the state")). *See also Black v. Indiana Area School Dist.*, 985 F.2d 707, 710–11 (3d Cir. 1993) (finding no state action under exclusivity test where private contractor provided state school bus system).

The second test inquires whether a private party received the assistance of a state actor or acted in concert with a state actor. *See Mark*, 51 F.3d at 1142 (citing *McKeesport Hospital v. Accreditation Council for Graduate Medical Educ.*, 24 F.3d 519, 524 (3d Cir.1994)). For example, the Supreme Court held in *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), that state action existed where a private party conspired with a state official to engage in unlawful discrimination. *Id.* at 152, 90 S.Ct. at 1605–06. *See also Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 941–42, 102 S.Ct. 2744, 2755–56, 73 L.Ed.2d 482 (1982) (holding that state action existed for purposes of § 1983 where private party relied upon state statute to obtain prejudgment writ of attachment against property of another private party).

The third standard is the "symbiotic relationship" test. This test becomes relevant if "[t]he State has so far insinuated itself into a position of interdependence with ... [the actor] that it must be recognized as a joint participant in the challenged activity."[4] *Krynicky v. Univ. of Pittsburgh*, 742 F.2d 94, 98 (3d Cir.1984) (quoting *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 725, 81 S.Ct. 856, 862, 6 L.Ed.2d 45 (1961)), *cert. denied*, 471 U.S. 1015, 105 S.Ct. 2018, 85 L.Ed.2d 300 (1985).

In *Burton*, the Court held that a private restaurant's discriminatory act of refusing to serve a minority customer constituted state action because the restaurant was located in a building owned by the Wilmington Parking Authority. The restaurant paid an annual lease fee of $28,700.00 to the Wilmington Parking Authority, which was a state agency. *Burton*, 365 U.S. at 720, 81 S.Ct. at 859. Noting the financial benefit to the Wilmington Parking Authority, the fact that the building and land containing the restaurant were publicly owned, the fact that the Authority funded maintenance of the building and land, and the fact that the restaurant guests had a favorable place to park which in turn might have increased use of the parking facilities, *id.* at 723–24, 81 S.Ct. at 860–61, the Court held that the restaurant and Authority maintained a symbiotic relationship rendering the state potentially liable for the restaurant's discriminatory acts. *Id.* at 725, 81 S.Ct. at 861–62. *See also Krynicky*, 742 F.2d at 102 (applying *Burton* to hold that universities' actions were committed under color of state law because the universities

"receive present financial support [and] the state has committed itself to future financial aid and sets an annual appropriation policy and tuition rate").

More recently, the Supreme Court refined the *Lugar* joint-participation test and articulated the approach undertaken by the Third Circuit in an action analogous to the instant case. *Edmonson v. Leesville Concrete Co.*, 500 U.S. at 620–22, 111 S.Ct. at 2082–84; *Mark*, 51 F.3d at 1143. In *Edmonson*, the Court instructed that courts must determine "first whether the claimed constitutional deprivation resulted from the exercise of a right or privilege having its source in state authority; and second, whether the private party charged with the deprivation could be described in all fairness as a state actor." *Edmonson*, 500 U.S. at 620, 111 S.Ct. at 2082–83 (internal citations omitted).

One commentator has noted that the first prong of this test "only asks whether the private actor who caused the harm to another person was acting in conformity with the law of the jurisdiction when he caused the harm," 2 RONALD D. ROTUNDA & JOHN E. NOWAK, TREATISE ON CONSTITUTIONAL LAW § 16.1, at 527 (2d ed. 1992), or in other words, the authority pursuant to which the private person engaged in the allegedly unlawful acts. *Mark*, 51 F.3d at 1144.

Seeming to synthesize certain elements of each of the three tests explained *supra*,[5] the Court in *Edmonson* explained that with respect to the second prong,

---

**4.** It should be noted that the "symbiotic relationship" test is not limited solely to the factual circumstances present in *Burton* and may be relevant here. Although the Fourth Circuit held in *Haavistola v. Community Fire Co. of Rising Sun*, 6 F.3d 211, 215 (4th Cir.1993) that the test applied only to "lessees of public property," the Third Circuit has expressly held that "the *Burton* test remains a viable framework for assessing state actor status." *Mark*, 51 F.3d at 1143 n. 6 (citing *Krynicky*, 742 F.2d at 100–01; *McKeesport Hospital*, 24 F.3d at 526 n. 1 (Becker, J., concurring in judgment)).

**5.** Indeed, it is unclear whether application of one of the three discrete tests for determining state action is consistent with the Supreme Court's approach in *Edmonson*. *See Mark*, 51 F.3d at 1155–58 (Greenberg, J., concurring) (despite

having written the opinion of the court, "I write separately ... because I believe *Edmonson* should be read to alter the interpretative landscape for all state action inquiries into whether a private actor should be considered a state actor for a particular action or course of conduct. I believe that the discrete test approach did not survive *Edmonson*"). *But see Groman v. Township of Manalapan*, 47 F.3d 628, 639 n. 17 (3d Cir.1995) ("The opinion in *Edmonson* appears neither to restrict courts to one specific approach nor to foreclose them from employing various approaches as warranted by the particular circumstances of the cases before them."). The Third Circuit has continued to apply the discrete test approach. *Mark*, 51 F.3d at 1155; *Groman*, 47 F.3d at 639–42 (3d Cir.1995).

[o]ur precedents establish that, in determining whether a particular action or course of conduct is governmental in character, it is relevant to examine the following: the extent to which the actor relies on governmental assistance and benefits, *see Tulsa Professional Collection Services, Inc. v. Pope,* 485 U.S. 478 [108 S.Ct. 1340, 99 L.Ed.2d 565] (1988); *Burton v. Wilmington Parking Authority,* 365 U.S. 715 [81 S.Ct. 856, 6 L.Ed.2d 45] (1961); whether the actor is performing a traditional governmental function, *see Terry v. Adams,* 345 U.S. 461 [73 S.Ct. 809, 97 L.Ed. 1152] (1953); *Marsh v. Alabama,* 326 U.S. 501 [66 S.Ct. 276, 90 L.Ed. 265] (1946); ... and whether the injury caused is aggravated in a unique way by the incidents of governmental authority, *see Shelley v. Kraemer,* 334 U.S. 1 [68 S.Ct. 836, 92 L.Ed. 1161] (1948).

*Edmonson,* 500 U.S. at 621–22, 111 S.Ct. at 2083. The Court then held that use of peremptory challenges in civil cases constituted state action under the Due Process Clauses of the Fifth and Fourteenth Amendments. *Id.* at 624–28, 111 S.Ct. at 2084–87. The Court concluded that the parties to a civil action extensively use state procedures and are assisted by state officials, that the peremptory challenge in a judicial proceeding involved a traditional government function, and that allowing race-based peremptory challenges would compromise the integrity of the judicial system and frustrate enforcement of a democratic system of government. *Id.*

The Third Circuit in *Mark* applied the foregoing analysis to hold that the Enterprise Fire Company ("Enterprise"), a volunteer fire department company in Hatboro, Pennsylvania, could be considered a state actor under § 1983. *Mark,* 51 F.3d at 1147. In that case, a member of Enterprise destroyed plaintiff's automobile repair business by committing arson. *Id.* at 1138. It was subsequently determined that the arsonist had a psychologically troubled background that included alcohol abuse. *Id.* at 1139–40. Plaintiff brought a civil rights suit naming Enterprise and others under the theory that Enterprise owed a constitutionally compelled duty to screen applicants for their mental

fitness before allowing them to serve as firefighters. *Id.* at 1140. Plaintiff asserted that Enterprise's failure to fulfill such an obvious and grave duty reflected a willful disregard of the rights of the individuals with whom the fire company came into contact. *Id.* Plaintiff therefore sought relief against Enterprise under § 1983 for the destruction of his property.

The Third Circuit concluded that the first prong of the *Edmonson* test was satisfied because the alleged constitutional injury was directly related to Enterprise's agreement to provide fire protection services to Hatboro. *Id.* at 1144. The authority for this arrangement was a state law which allowed municipalities to " 'make regulations, within the borough ... relative to the cause and management of fires and the prevention thereof.' " *Mark,* 51 F.3d at 1144 (quoting PA. STAT.ANN. tit. 53, § 46202(21) (Supp.1994)). Accordingly, Enterprise was the duly appointed fire department for the borough of Hatboro.

The Third Circuit also concluded that the second factor had been satisfied. The court first noted that provision of fire protection is a governmental function in Pennsylvania, based on a long line of Pennsylvania state court decisions recognizing that the duty to extinguish fires is a public duty properly delegated to public agents, and that volunteer fire companies enjoy governmental immunity from state tort claims. *Id.* at 1145 (citing *Guinn v. Alburtis Fire Co.,* 531 Pa. 500, 614 A.2d 218, 219, 220 (1992); *Commonwealth v. Barker,* 211 Pa. 610, 61 A. 253, 254 (1905) *Fire Insur. Patrol v. Boyd,* 120 Pa. 624, 15 A. 553, 556–57 (1888); *Zern v. Muldoon,* 101 Pa.Cmwlth. 258, 516 A.2d 799, 805 (1986), *appeal dismissed,* 518 Pa. 75, 541 A.2d 314 (1988)). Significantly, the Third Circuit also observed that a Pennsylvania appellate court had already held that a volunteer fire department may be held liable under § 1983. *Id.* at 1146 (citing *Tallon v. Liberty Hose Co. No. 1,* 336 Pa.Super. 530, 485 A.2d 1209, 1211–1214 (1984)). The Third Circuit also recognized that Enterprise received significant resources from Hatboro in the form of proceeds from a fire tax the borough imposed on its residents. *Id.* at

1148. The agreement between Hatboro and Enterprise also required the latter to submit an annual budget to the township council and a monthly report of the status of Enterprise's operations. *Id.*

In *Versarge v. Township of Clinton,* Civ. No. 90–0257, 1991 WL 247611, at *4 (D.N.J. Nov. 18, 1991), *aff'd on other grounds,* 984 F.2d 1359 (3d Cir.1993), the Court held that the actions of Annandale Hose Company No. 1, a volunteer fire department in Clinton, New Jersey, in discharging a member for alleged threats against the fire department's chief and statements made to the township council regarding alleged unlawful activities of the chief and the department, constituted state action.[6] The Court observed that the State of New Jersey endows municipalities with authority to contract with volunteer fire departments to provide fire-fighting services to the municipality, but requires the municipality to supervise and control the department's members. *Id.* at *3 (quoting N.J.S.A. 40A:14–68). New Jersey law also specifies that in discharging their duties, the members are exercising a governmental function. *Id.* (quoting N.J.S.A. 40A:14–68). *See also infra* at 1237–39. Indeed, "[t]he only power that the State explicitly grants to the members of the company rather than the governing body is the power to decide who shall be chief of the department." *Id.* (citing N.J.S.A. 40A:14–68). The municipal code pursuant to which the fire department served the Township of Clinton similarly endowed the department with "all the powers it needs to fight fires within the Township and otherwise function as a fire department," *id.* (citing Clinton Municipal Code §§ 5–52, 5–52A, 5–52B), but made the township council ultimately responsible for providing adequate fire protection. *Id.* at *4 (citing Clinton Municipal Code §§ 5–52B, 5–52C(1), 5–52D).

In view of these factors, the Court in *Versarge* concluded as follows:

> Simultaneously, the Township retains the "ultimate responsibility" for fire protection within the Township, and the State of New Jersey vests the municipality with the responsibility for supervision and control of Company members. Additionally, by virtue of its relationship with the Company, the Township receives the substantial benefit of having a force to combat fires within the Township. As a result, the Township, through its Code, and the Company, through its members, were joint participants in plaintiff's expulsion. Thus, this court finds that the act of expelling plaintiff from the Company was state action.

*Id.* (internal citation omitted).

As the duly appointed and only fire company for the Borough of Tuckerton, TVFC receives over $10,000.00 from the Borough of Tuckerton and $2000.00 from the County of Ocean each year. Eggert Aff. ¶ 4. It is unclear, however, what percentage of the TVFC's budget these funds constitute. TVFC owns the building in which it operates, although the Borough previously deeded some of the property to TVFC. *Id.* ¶ 5; Constantine Certif. ¶ 3. TVFC owns most of the equipment, but the Borough owns the fire trucks. Eggert Aff. ¶ 6; Constantine Certif. ¶ 3. The Borough provides workers' compensation insurance pursuant to N.J.S.A. 34:15–43. *See infra* page 1239.

Defendants assert that the "[t]he Borough exercises no day to day control over the operations of the Company," Constantine Certif. ¶ 4, while plaintiff evidently concedes that "the Code grants a certain amount of autonomy to the Company in running many of its day-to-day affairs...." Plaintiff's Brief in Opposition to Summary Judgment at 7.

---

**6.** Although the Court's decision in *Versarge* predates the Third Circuit's decision in *Mark* and did not account for the Supreme Court's decision in *Edmonson,* its relevance here is manifest. Apart from containing an instructive explanation and application of New Jersey law with respect to volunteer fire departments, it is faithful to the discrete test analysis that *Mark* emphasizes is still vital despite *Edmonson. See Versarge,* 1991 WL 247611, at *2–4. *See also supra* page 1235 & note 5.

However, the manner in which the District Court and Third Circuit addressed the First Amendment, overbreadth and due process issues raised in *Versarge, see, e.g., Versarge,* 984 F.2d at 1363–72, is irrelevant here because the parties have not moved for summary judgment on those grounds.

Nonetheless, the Tuckerton Code reflects the municipality's control over TVFC. It establishes TVFC as the duly appointed fire department for the Borough. Tuckerton Code, Ord. No. 75 § 10–1 *et seq.* It also reflects the Borough Council's considerable control over matters of TVFC membership by providing as follows:

[M]embership shall not become effective until the name of the person elected shall have been reported to the borough Council by the chief of said Company, with his approval, and until such election shall be confirmed and approved by resolution of the borough Council.

.    .    .    .    .

Any member of said Company may be removed for cause and upon notice by a majority vote of the members in good standing of the said Company, or, for cause and upon notice by a majority of the members of the Council of this borough.

*Id.* §§ 10–5, 10–7. The Borough has also established membership requirements, *id.* § 10–1; a requirement that the company secretary maintain attendance and duty records and submitted to the Borough council and Mayor, *id.* § 10–3; application requirements, *id.* § 10–4; and the requirement that the Borough clerk maintain a role of the company's active members. *Id.* § 10–6. The Borough also requires that active members "perform at least sixty percent (60%) of duty to be composed of actual attendance and duty at fires and drills." *Id.* § 10–2.

Like the Third Circuit in *Mark* and the District Court in *Versarge,* we also must look to relevant New Jersey law to determine whether the extent to which fire protection and, in particular, volunteer fire companies, are viewed as a governmental or public activity. The Court first notes that New Jersey law has consistently recognized that firefighting is a public or governmental function. *See, e.g., Berko v. Freda,* 93 N.J. 81, 86, 459 A.2d 663 (1983) (applying "fireman's rule" to police officers and noting that both firefighters and police officers "are paid to confront crises and allay dangers created by an uncircumspect citizenry, a circumstance that serves to distinguish [them] from most other public employees. . . . Citizens summon po-

lice and firefighters to confront danger. . . . Governmental entities maintain police and fire departments in anticipation of those inevitable physical perils that burden the human condition"); *Schwartz v. Borough of Stockton,* 32 N.J. 141, 150, 160 A.2d 1 (1960) ("[F]ire protection, including the operation and maintenance of fire apparatus and the construction and management of fire houses and other firefighting facilities, is a governmental function. . . . [W]e are of the opinion that the principle necessarily extends to municipal arrangements with volunteer companies. . . ."); *Vogt v. Borough of Belmar,* 14 N.J. 195, 206, 101 A.2d 849 (1954) ("Protection against fire is a public governmental function that is generally held to exclude the master and servant relation between the municipality and the members of its fire department.") (citations omitted); *Brower v. Franklin Tp.,* 15 N.J.Misc. 325, 191 A. 463, 464 (W.C.Bur.1937) (holding volunteer firefighter to be municipal employee because municipal ordinance and state law provided for township oversight of fire company).

New Jersey statutory provisions reflect as well the state legislature's intent to attribute the actions of a volunteer fire company to the state. For example, N.J.S.A. 40A:14–68 provides as follows:

In any municipality not having a paid or part-paid fire department and force, the governing body, by ordinance, may contract with a volunteer fire company or companies in such municipality for purposes of extinguishing fires, upon such terms and conditions as shall be deemed proper. *The members of any such company shall be under the supervision and control of said municipality and in performing fire duty shall be deemed to be exercising a governmental function;* however, the appointment or election of the chief of the volunteer fire company shall remain the prerogative of the membership of the fire company as set forth in the company's certificate of incorporation or bylaws.

N.J.S.A. 40A:14–68 (emphasis added). *See also* N.J.S.A. 40A:14–70.1(b) (recognizing that members are performing public function in performing duties). The Senate County

and Municipal Government Statement accompanying a 1989 amendment to the statute states that although it was intended to allow the volunteer fire company contracting with a municipality to appoint its own chief, the company nonetheless remains "under the supervision and control of the municipality." Senate No. 913, L.1989, c. 285.

Consistent with the state's recognition that fire duty is a governmental function, and as in *Mark*, New Jersey immunizes volunteer fire fighters from tort liability for acts arising in performance of their fire protection duties. The relevant statute provides in pertinent part as follows:

> No member of a volunteer fire company, which provides emergency first aid and rescue services or services for the control and extinguishment of fires, or both, ... shall be liable in any civil action to respond in damages as a result of his acts of commission or omission arising out of and in the course of his rendering in good faith any such services, or arising out of and in the course of participation in any authorized drill....

N.J.S.A. 2A:53A–13. New Jersey law similarly immunizes volunteer fire companies:

> No volunteer fire company ... incorporated or unincorporated, which provides services for the control and extinguishment of fires and emergency public first and rescue services, or both, shall be liable in any civil action to respond in damages as a result of any acts of commission or omission arising out of and in the course of the rendition in good faith of any such services, or arising out of and in the course of participation in any authorized drill, by any member of the volunteer fire company....

N.J.S.A. 2A:53A–13.1.

New Jersey municipalities must provide workers' compensation insurance to volunteer firefighters for firefighting and drills pursuant to N.J.S.A. 34:15–43. Additionally, state law expressly recognizes volunteer fire companies' dependence on municipal funding by allowing municipalities to make contributions to them. N.J.S.A. 40A:14–33, 34 & 35. One court has stated that "[t]he very fact that municipalities are authorized to and do contribute money and/or equipment raised or paid for out of tax revenues to volunteer companies under N.J.S.A. 40A:14–33, 34 and 35 strongly suggests the existence and importance of the public function volunteer fire companies perform." *D'Eustachio v. City of Beverly*, 177 N.J.Super. 566, 572, 427 A.2d 126 (Law Div.1979). *See also Willingboro Tp. v. Mobil Oil Corp.*, 159 N.J.Super. 593, 388 A.2d 1014 (App.Div.1978) (holding that township could condemn land and lease it rent-free to volunteer fire company as valid purpose under condemnation statute, N.J.S.A. 40A:12–15).

New Jersey law also requires notice under N.J.S.A. 59:8–3 *et seq.* prior to suit against a volunteer fire company. In *D'Eustachio*, the court held that two volunteer fire companies were public entities and therefore entitled to a notice of claim under the New Jersey Tort Claims Act, N.J.S.A. 59:1–3 *et seq.*, because "virtually every statutory reference concerning volunteer companies refers to fire protection as a governmental function." *D'Eustachio*, 177 N.J.Super. at 572, 427 A.2d 126 (quoting N.J.S.A. 40A:14–68; N.J.S.A. 34:15–43; N.J.S.A. 40A:14–33; N.J.S.A. 40A:14–34; N.J.S.A. 40A:14–35). The court also found that the municipal ordinance governing the companies "draws these two companies so closely under the [township's] wing as to invest them with governmental powers in the matter of fire prevention and control." *Id.* In that case, as here, the ordinance required attendance at emergencies and drills. Additionally, as here, Beverly Township gave cash contributions in unspecified amounts to each company pursuant to N.J.S.A. 40A:14–33 and N.J.S.A. 40A:14–34. *Id.* at 571, 427 A.2d 126.

■ Consideration of the foregoing factors compels the Court to find TVFC a state actor for purposes of § 1983. The New Jersey Legislature and courts expressly view firefighting as a governmental or public function that municipalities are required to provide or delegate to volunteer companies, and treat volunteer fire companies as public entities for all relevant purposes. Similarly, volunteer firefighters receive a number of benefits offered to public workers, including the fireman's rule, workers' compensation provided by the municipalities, and immunity from tort liability.

Additionally, the Tuckerton Code makes clear that the Tuckerton Borough Council has significant control over various aspects of the TVFC. The Borough must approve new members and has established a minimum level of participation to remain an active member. The Borough maintains attendance and duty records of all active members. *See* Tuckerton Code Ord. 75 § 10–3. Failure to meet these requirements presumably would subject a member to removal by either the Borough or TVFC. *See* Tuckerton Code Ord. 75 §§ 10–2, 10–7.

Moreover, the Borough provides resources necessary to allow TVFC to function. In addition to granting TVFC $10,000.00 each year, along with the $2000.00 funded annually by Ocean County, the Borough owns the fire trucks and has provided some of the land upon which TVFC is housed. It would be difficult for TVFC to protect against fires without the trucks or, we suspect, the money.

It is therefore apparent that the Borough and TVFC are intertwined to a great extent. As Tuckerton's duly appointed fire company, TVFC relies on funding and fire trucks provided by the Borough, and is accountable to the Borough for its membership and activities. In return, the Borough relies upon TVFC to perform firefighting services on its behalf. Moreover, New Jersey law has consistently recognized this function as governmental or public in nature, and the Tuckerton Code recognizes it as ultimately being the municipality's responsibility. The existence of state action here is manifest in much the same manner as in *Mark* and *Versarge*. *See Versarge*, 1991 WL 247611, at *3.

That the allegedly unconstitutional action occurred at a membership meeting addressing plaintiff's membership, rather than during an emergency or drill, does not remove TVFC from state actor status. The actions with which plaintiff took issue in the letter published in the January 13, 1994 edition of the *Tuckerton Beacon*, which culminated in his alleged expulsion, occurred during an emergency response and are directly relevant here. *See supra* page 1232. Additionally, and perhaps more so than in any other area of TVFC operations, the Borough has thorough control over membership matters,

including eligibility, election, appointment, requirements for active members and expulsion. In addition to having promulgated these regulations, the Borough is ultimately responsible for each of these areas of membership and retains final say over certain membership matters and records thereof. Moreover, if plaintiff has not been expelled, he remains subject to expulsion by the Borough Council under Tuckerton Code Ord. 75 § 10–7, as well as by a vote of the TVFC active membership, if he cannot fulfill the active duty requirements that the Borough promulgated in Tuckerton Ord. 75 § 10–2. Accordingly, the challenged action directly relates to an area in which the Borough is thoroughly intertwined with the TVFC. *See Mark*, 51 F.3d at 1144; *Versarge*, 1991 WL 247611, at *4.

In the absence of a legitimate factual dispute on this issue, the Court must find as a matter of law that TVFC is a state actor for purposes of plaintiff's § 1983 claims in Counts I and II of the Complaint. Accordingly, the Court will grant plaintiff's motion for summary judgment on this issue and deny defendants' motion for summary judgment. Additionally, the Court will deny as moot plaintiff's motion pursuant to FED. R.CIV.P. 56(f).

### 2. *Whether There Was "Action" Here*

Having determined that plaintiff is entitled to summary judgment on the issue of whether defendants are state actors, the Court must next consider whether there was "action" in this matter. In other words, defendants' status as state actors is irrelevant if they took no action. Defendants assert that they did not because plaintiff was not expelled from the TVFC. *See supra* pages 1232–33. Plaintiff avers that he was expressly expelled and that, in any event, his banishment from fires and drills is the equivalent of expulsion. *See id.*

■ This dispute clearly presents a genuine issue of material fact that precludes summary judgment. The statements of plaintiff and John Constantine are in direct conflict and neither side has produced other evidence on this issue. *Compare* Eggert Aff. ¶ 18 and

Complaint ¶ 10 *with* Constantine Certif. ¶ 7. Indeed, it is unclear whether defendants, if they did not explicitly expel plaintiff, effectively did so by banning him from responding to any emergencies or attending drills. Apart from possibly frustrating the very reason for plaintiff's membership in TVFC, such a ban might constitute expulsion because § 10–2 of Ordinance 75 of the Tuckerton Code provides a minimum standard for active members of 60% performance of duty in the form of duty at drills and fires. If the ban makes it impossible for plaintiff to meet these requirements, he might then be subject to removal for good cause pursuant to § 10–7 of the Tuckerton Code by either the Borough Council or a vote of the membership. Because neither party has carried the burden as movant of showing that there is no factual issue on the issue of whether plaintiff was actually expelled, or on the issue of whether he was implicitly expelled by banishment from attending fires and drills, the Court will deny both motions for summary judgment on the issue of whether there was state action.

## C. PLAINTIFF'S STATE LAW CLAIMS

Defendants also seek summary judgment against Count V of the Complaint.[7] They argue that plaintiff did not comply with the notice requirements of the New Jersey Tort Claims Act, which states that "[n]o action shall be brought against a public entity or public employee under this act unless the claim upon which it is based shall have been presented in accordance with the procedure set forth in this chapter." N.J.S.A. 59:8–3. Additionally,

[a] claim relating to a cause of action for death or for injury or damage to person or to property shall be presented as provided

in this chapter not later than the ninetieth day after accrual of the cause of action. After expiration of six months from the date notice of claim is received, the claimant may file suit in an appropriate court of law. The claimant shall be forever barred from recovering against a public entity or public employee if:

a. He failed to file his claim with the public entity within 90 days of accrual of his claim except as otherwise provided in section 58:8–9; or

b. Two years have elapsed since the accrual of the claim; or

c. The claimant or his authorized representative entered into a settlement agreement with respect to the claim....

N.J.S.A. 59:8–8. The process for submitting a claim is as follows:

a. A claim shall be presented to the public entity by delivering it to or mailing it certified mail· to the office of the Attorney General or the office of the State agency allegedly involved in the action. A claim may be presented to a local public entity by delivering it or mailing it certified mail to the entity.

b. A claim or application shall be deemed to have been presented in compliance with this section even though it is not delivered or mailed as provided in this section if it is actually received at an office of the State or local public entity within the time prescribed for presentation thereof.

c. Service of the notice required by this chapter upon the public entity shall constitute constructive service upon any employee of that entity.

---

7. The analysis in this section does not apply to plaintiff's claim in Count III alleging a violation of his rights under the New Jersey Constitution. Defendants have moved for summary judgment for failure to file a notice of tort claim under N.J.S.A. 59:8–8 only as against Count V. Indeed, their motion papers make no mention of Count III. Therefore, the Court need not resolve at this point the difficult and unbriefed question of whether notice is required before filing suit for an alleged violation of a right conferred by the New Jersey Constitution. *Compare Estate of McGrath by McGrath v. North Jersey Dist. Water Supply Comm'n,* 224 N.J.Super. 563, 540 A.2d

1350 (Law Div.1986) (holding notice provisions inapplicable to civil rights and takings claims), *with Lloyd v. Borough of Stone Harbor,* 179 N.J.Super. 496, 432 A.2d 572 (Ch.Div.1981) (holding that language of N.J.S.A. 59:8–3 and N.J.S.A. 59:8–8 compelled a broad reading of "injury" in N.J.S.A. 59:8–8 and included state constitutional claims). It is clear, however, that notice is not required to the extent plaintiff seeks equitable relief in Count III. *Simon v. Oldmans Tp.,* 203 N.J.Super. 365, 497 A.2d 204 (Ch.Div. 1985); *Slocum v. Borough of Belmar,* 233 N.J.Super. 437, 559 A.2d 17 (Law Div.1989).

N.J.S.A. 59:8–10. The claim must be presented within ninety days of its accrual or within one year after its accrual in the discretion of a superior court judge, N.J.S.A. 59:8–9, and is deemed presented and received at the time of deposit. N.J.S.A. 59:8–11. Failure to present a claim in compliance with these statutory requirements bars it. *S.E.W. Friel Co. v. N.J. Turnpike Auth.*, 73 N.J. 107, 118–20, 373 A.2d 364 (1977); *Karczewski v. Nowicki*, 188 N.J.Super. 355, 357, 457 A.2d 837 (App.Div.1982). As noted above, New Jersey law applies the notice requirements to volunteer fire departments. *See supra* page 1239 (discussing *D'Eustachio*, 177 N.J.Super. at 572, 427 A.2d 126).

■ In this case, defendants contend and plaintiff concedes that no notice of claim was presented, either to TVFC or the individual defendants. Accordingly, the Court will dismiss Count V as against defendant TVFC. However, the same reasoning does not apply to the individual defendants. Although amendments to the New Jersey Tort Claims Act in 1994 now require notice to public employees as well as public entities, these amendments were not effective until June 23, 1994. Plaintiff's claim accrued in either January, 1994, when he alleges he first learned he had been banned from responding to fires, or March 1, 1994, when defendant Hewitt, after a meeting with the other individual defendants, formally announced that plaintiff was banned from responding to fires. *See supra* page 1232. The notice requirement as to public employees therefore was not effective when the claim accrued or upon expiration of the ninety day period for its service. Accordingly, the Court is constrained to apply the pre-June 23, 1994 amendment rule, which did not require notice as a prerequisite to suit under the New Jersey Tort Claims Act. *See Chatman v. Hall*, 128 N.J. 394, 418–19, 608 A.2d 263 (1992) (holding that regular state statutes of limitations, not notice requirement of N.J.S.A. 59:8–8, govern actions against state employees).

In any event, it is clear that Count V must be dismissed as to all defendants pursuant to N.J.S.A. 59:9–2. New Jersey law contains a verbal threshold requirement in suits against public entities and public employees that states as follows:

> No damages shall be awarded against a public entity or public employee for pain and suffering resulting from any injury; provided, however, that this limitation on the recovery of damages for pain and suffering shall not apply in cases of permanent loss of a bodily function, permanent disfigurement or dismemberment where the medical treatment expenses are in excess of $1,000.00. For purposes of this section medical treatment expenses are defined as the reasonable value of services rendered for necessary surgical, medical and dental treatment of the claimant for such injury, sickness or disease, including prosthetic devices and ambulance, hospital or professional nursing service.

N.J.S.A. 59:9–2.

■ The Supreme Court has made clear that "pain and suffering" as barred by the statute includes emotional distress and mental trauma that does not result from a permanently debilitating or disfiguring physical injury. *Ayers v. Jackson Tp.*, 106 N.J. 557, 577, 525 A.2d 287 (1987). Accordingly, merely subjective symptoms of anxiety, nervousness and depression unaccompanied by requisite indicia of permanent physical infirmity are not recoverable injuries under the New Jersey Tort Claims Act. *Id.*

■ In this case, plaintiff has not pleaded the existence of any physical injury or infirmity, whether caused by defendants or otherwise; nor has he presented any such evidence to rebut defendants' challenge under N.J.S.A. 59:9–2. Instead, the Complaint merely alleges subjective symptoms of embarrassment, anguish and humiliation stemming not from any physical injury caused by defendants, but solely from his alleged expulsion. Accordingly, the Court must dismiss this claim in its entirety.

## III. CONCLUSION

For the reasons set forth above, the Court will grant defendants' motion for summary judgment against Count V and grant it in part and deny it in part as to Counts I and II of the Complaint. Specifically, the Court will

dismiss Counts I and II to the extent they seek relief pursuant to 42 U.S.C. § 1981 and § 1985. The Court will grant plaintiff's motion for summary judgment as to the issue of whether defendants are state actors for purposes of Counts I and II, and deny his motion for summary judgment as to the issue of expulsion from TVFC. Finally, the Court will deny as moot plaintiff's motion pursuant to FED.R.CIV.P. 56(f). An appropriate form of Order is filed herewith.

### ORDER

For the reasons set forth in the Memorandum Opinion filed on this same date;

IT IS on this 4th day of September, 1996,

ORDERED that defendants' motion for summary judgment against Counts I and II of the Complaint be and hereby is GRANTED in PART and DENIED in PART; and it is further

ORDERED that Counts I and II of the Complaint be and hereby are DISMISSED only to the extent they seek relief pursuant to 42 U.S.C. § 1981 and § 1985; and it is further

ORDERED that defendants' motion for summary judgment against Count V be and hereby is GRANTED; and it is further

ORDERED that Count V of the Complaint be and hereby is DISMISSED in its ENTIRETY; and it is further

ORDERED that plaintiff's motion for summary judgment on the issue of state action by defendants for purposes of Counts I and II be and hereby is GRANTED; and it is further

ORDERED that plaintiff's motion for summary judgment on the issue of plaintiff's expulsion from defendant Tuckerton Volunteer Fire Company No. 1 be and hereby is DENIED; and it is further

ORDERED that plaintiff's motion pursuant to FED.R.CIV.P. 56(f) be and hereby is DENIED as MOOT.