# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| **CHRISTOPHER DUFRESNE,** | : | |
| | : | C.A. No. K19C-03-008 NEP |
| **Plaintiff,** | : | In and for Kent County |
| | : | |
| v. | : | |
| | : | |
| **CAMDEN-WYOMING FIRE** | : | |
| **COMPANY INC., and BOBBI SCOTT,** | : | |
| **HAROLD SCOTT, JONNY NICHOLS,** | : | |
| **MATT BROWN, JAMES QUEEN SR.,** | : | |
| **HARRY GLENN NEESE, RON DEAR,** | : | |
| **ALAN REMBOLD, BRIAN DAWICKI,** | : | |
| **CARL WILLOUGHBY, SCOTT** | : | |
| **THORNE and BRIAN NEESE consisting** | : | |
| **of the BOARD OF DIRECTORS for the** | : | |
| **CAMDEN-WYOMING FIRE** | : | |
| **COMPANY and BOBBI SCOTT,** | : | |
| **HAROLD SCOTT, JONNY NICHOLS,** | : | |
| **MATT BROWN, JAMES QUEEN SR.,** | : | |
| **HARRY GLENN NEESE, RON DEAR,** | : | |
| **ALAN REMBOLD, BRIAN DAWICKI,** | : | |
| **CARL WILLOUGHBY, SCOTT** | : | |
| **THORNE and BRIAN NEESE in their** | : | |
| **personal capacity,** | : | |
| | : | |
| **Defendants.** | : | |

Submitted: February 26, 2020
Decided: May 5, 2020

Upon Defendants' Motion to Dismiss the Second Amended Complaint in Part
**GRANTED**

## MEMORANDUM OPINION AND ORDER

Gregory A. Morris, Esquire, Liguori & Morris, Attorney for Plaintiff.

Jonathan L. Parshall, Esquire, Murphy & Landon, Attorney for Defendants.

**Primos, J.**

Before the Court is the Motion of Defendants to Dismiss the Second Amended Complaint in Part. For the reasons set forth below, Defendants' Motion is **GRANTED**.

## I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The facts recited herein are as alleged in the Second Amended Complaint of Plaintiff Christopher Dufresne (hereinafter "Dufresne").[1] Defendant Camden-Wyoming Fire Company, Inc. (hereinafter the "Fire Company") is a corporation operating as a volunteer fire company in Camden-Wyoming, Delaware. The individual Defendants were members of the Board of Directors of the Fire Company (hereinafter the "Board") at the time of the events alleged in the Second Amended Complaint.

From 2000 to 2018, Dufresne was a member of the Fire Company and held various positions, including Board member and Deputy Chief. Near the end of Dufresne's tenure with the Fire Company, an unknown member of the Fire Company alleged that Dufresne had placed a tape recorder in the Board's meeting room. In response, the Board ordered an investigation. Upon conclusion of the investigation, the Board determined that the allegation was false and that they would not discipline Dufresne for the alleged action.

The Board then hired an outside investigator to conduct a second investigation.[2] Like the first, the second investigation revealed no direct evidence that Dufresne had placed a tape recorder in the Board's meeting room. Nonetheless, the Board terminated Dufresne's membership. During the second investigation and after Dufresne's termination, all of the Defendants "and their representatives" made defamatory statements about him to third parties. As a result, the Camden Police

---

[1] *See Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896 (Del. 2002) (on a motion to dismiss "all well-pleaded factual allegations are accepted as true").

[2] Dufresne was suspended from membership during the second investigation.

2

Department arrested Dufresne for invasion of privacy and felony wire-tapping,[3] and Dufresne suffered injury to his reputation, loss of employment and employment opportunities, and mental anguish.

Dufresne filed a Complaint on March 7, 2019, naming the Fire Company "and [its] Board of Directors"[4] as defendants and alleging that they had defamed him. On May 8, 2019, Dufresne filed an Amended Complaint in which he named the individual members of the Board as defendants rather than the Board as a single entity. Defendants filed a motion to dismiss on May 22, 2019, asserting that both the Fire Company and the individual Defendants were immune from suit under the County and Municipal Tort Claims Act (hereinafter the "Act").[5] In response to that motion, Dufresne filed a Second Amended Complaint on July 15, 2019, adding claims against all Defendants under 42 U.S.C. § 1983 (hereinafter "Section 1983") and also stating that the individual Defendants were being sued both in their official capacities and in their "personal capacit[ies] unrelated to acting as [] agent[s]" of the Fire Company. On August 12, 2019, Defendants filed their Motion to Dismiss the Second Amended Complaint in Part,[6] which is now before the Court.

## II. STANDARD OF REVIEW

On a motion to dismiss, the moving party bears the burden of demonstrating that "under no set of facts which could be proven in support of [the complaint] would the [plaintiff] be entitled to relief."[7] Upon this Court's review of a motion to dismiss, "(i) all well-pleaded factual allegations are accepted as true; (ii) even vague allegations are well-pleaded if they give the opposing party notice of the claim; (iii)

---

[3] The charges were later dismissed.
[4] The Complaint named the Board as a defendant rather than its individual members.
[5] 10 *Del. C.* §§ 4001-4013.
[6] Defendants seek dismissal of Dufresne's Section 1983 claims against all Defendants, and of his defamation claims against the Fire Company and against the individual Defendants in their official capacities.
[7] *Daisy Constr. Co. v. W.B. Venables & Sons, Inc.*, 2000 WL 145818, at *1 (Del. Super. Jan. 14, 2000).

3

the Court must draw all reasonable inferences in favor of the non-moving party; and [(iv)] dismissal is inappropriate unless the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof."[8]

Prior decisions of the Superior Court are split as to whether to apply state law pleading standards, rather than federal pleading standards, to claims brought under Section 1983.[9] This Court finds persuasive the holding in *Dollard v. Callery* that conflict-of-laws principles require application of Delaware's "conceivability pleading standard" to Dufresne's federal claims, rather than the heightened federal "plausibility standard"[10] established in *Bell Atlantic Corporation v. Twombly*[11] and *Ashcroft v. Iqbal*.[12]

Finally, the Court need not, and will not, convert the Motion to one for summary judgment in response to Defendants' submission of certain exhibits to the Motion. Generally, when a court refers to matters outside the pleadings on a motion to dismiss, the motion must be converted to one for summary judgment.[13] However, when a court takes judicial notice[14] of an exhibit to a motion to dismiss, it need not convert the motion to one for summary judgment.[15]

---

[8] *Savor*, 812 A.2d at 896-97 (internal citations and quotations omitted).

[9] *Compare Dollard v. Callery*, 185 A.3d 694, 703-04 (Del. Super. 2018) (reviewing a Section 1983 claim and holding that "settled conflict of laws principles require that this Court apply its own procedural rules, including pleading rules, to all claims, even those arising under federal law") *with Eskridge v. Hutchins*, 2017 WL 1076726, at *2 (Del. Super. March 22, 2017) ("a Section 1983 claimant in a Delaware State court must plead his or her claim with sufficient particularity to satisfy the [federal] plausibility standard").

[10] *Dollard*, 185 A.3d at 703-04; *see also Brown v. Western Ry. of Alabama*, 338 U.S. 294, 296 (1949) (when states exercise concurrent jurisdiction to enforce plaintiff's federal rights, they may establish procedural rules governing litigation in their courts so long as the federal rights being asserted are not "defeated by the forms of local practice") (internal citations omitted). In this case, of course, applying a less stringent pleading standard to Dufresne's claims cannot interfere with any federal rights that he asserts.

[11] 550 U.S. 544 (1991).

[12] 556 U.S. 662 (2009).

[13] *Malpiede v. Townson*, 780 A.2d 1075, 1092 (Del. 2001).

[14] *See* D.R.E. 201(b)(2) (court may take judicial notice of facts that are "not subject to reasonable dispute" because they "[c]an be accurately and readily determined from sources whose accuracy cannot reasonably be questioned").

[15] *In re General Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 171 (Del. 2006).

Here, Exhibit 2 to Defendants' Motion is a list of registered Delaware volunteer fire companies, and Exhibit 5 represents census data for the city of Wilmington. Exhibit 2, generated by the Delaware State Fire Prevention Commission,[16] is subject to judicial notice because it is a public record.[17] Exhibit 5 is subject to judicial notice because it contains U.S. census data.[18] The Court takes notice of Exhibits 2 and 5 and will render its decision on the pleadings alone because both exhibits contain facts that are not subject to reasonable dispute.

## III.   DISCUSSION

### A. Dufresne's Section 1983 claims must be dismissed because Defendants are not state actors pursuant to Section 1983.

Counts I and II of the Second Amended Complaint assert claims against Defendants pursuant to Section 1983. That statute provides that "[e]very person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . ."[19] Thus, Section 1983 imposes civil liability on one who, under color of state law, deprives another of rights secured by the U.S. Constitution.[20] Therefore, a private entity acting under color of state law is held to

---

[16] The Delaware State Fire Prevention Commission is a public body. *See* 16 *Del. C.* § 6602 (Governor has final authority over appointment and removal of members of Fire Prevention Commission).

[17] *In re Wheelabrator Technologies Inc. S'holders Litig.,* 1992 WL 212595, at *12 (Del. Ch. Sept. 1, 1992); *Stahl v. U.S. Dep't of Agric.*, 327 F.3d 697, 700 (8th Cir. 2003).

[18] *See Hollinger v. Home State Mut. Ins. Co.,* 654 F.3d 564, 571-72 (5th Cir. 2011) (U.S. census data is proper and frequent subject of judicial notice).

[19] 42 U.S.C.A. § 1983 (West 2020).

[20] "Under color" of state law has the same meaning as "state action." *See Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982) ("'In cases under § 1983, "under color" of law has consistently been treated as the same thing as the "state action" required under the Fourteenth Amendment.'") (quoting *U.S. v. Price*, 383 U.S. 787, 794 n. 7 (1966)).

5

constitutional standards because the U.S. Constitution "constrains governmental action 'by whatever instruments or in whatever modes that action may be taken.'"[21]

The U.S. Supreme Court has employed various approaches to determine whether a private entity is a state actor for purposes of Section 1983, and thus there is "no single test to identify state actions and state actors."[22] However, all of these approaches require that the reviewing court determine whether the private entity's conduct is "'fairly attributable to the State.'"[23] In this case, an application of each of these tests demonstrates that Defendants are not state actors for purposes of Section 1983 because their actions were not fairly attributable to the State.

### 1. Defendants are not state actors because the State did not create the Fire Company, nor did it control the Fire Company's Board.

Pursuant to one of the state actor tests provided by U.S. Supreme Court jurisprudence, the reviewing court must consider whether the entity in question is controlled by the government. In *Lebron v. National Railroad Passenger Corporation*, Amtrak had denied the petitioner's request to place a political advertisement on one of Amtrak's billboards.[24] The petitioner filed suit, arguing that Amtrak was subject to the requirements of the U.S. Constitution as a federal entity.[25] The issue before the Court was whether Amtrak was a state actor pursuant to Section 1983.

---

[21] *Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374, 392 (1995) (quoting *Ex parte Virginia*, 100 U.S. 339, 346-47 (1880)).

[22] *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 294 (2001).

[23] *Rendell-Baker*, 457 U.S. at 838 (quoting *Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 937 (1982)).

[24] 513 U.S. at 377.

[25] *Id.* at 378-79.

Upon review, the Court noted that Amtrak was created by Congress[26] to further the federal government's objectives.[27] The federal government had appointed a majority of Amtrak's board of directors and owned all of Amtrak's preferred stock,[28] thereby subjecting Amtrak to federal government control.[29] These facts rendered Amtrak "no different from the so-called independent regulatory agencies," which are likewise controlled and created by the federal government.[30] For these reasons, the Court held that Amtrak was part of the government for purposes of the petitioner's lawsuit.[31]

Here, the Fire Company was not created by a special act of the General Assembly. Thus, there is no State statute subjecting the Fire Company to the "direction and control" of State officials.[32] Moreover, Dufresne concedes that the State of Delaware has not reserved to itself appointment rights over the Fire Company's Board.[33] Therefore, pursuant to the *Lebron* test, Defendants are not state actors.

### 2. Defendants are not state actors because the Fire Company does not perform a traditional and exclusive government function.

Under a second test provided by the U.S. Supreme Court, the reviewing court must determine whether the private entity performs a function that is traditionally

---

[26] Former 45 U.S.C.A. §§ 541-545 (West 2020) (*repealed by* Pub.L. 103-272, § 7(b), July 5, 1994, 108 Stat. 1379).

[27] *See Lebron*, 513 U.S. at 383 ("Congress established Amtrak in order to avert the threatened extinction of passenger trains in the United States.").

[28] Six of Amtrak's eight externally named directors were appointed by the President of the United States, and the two other externally named directors were appointed by the United States as Amtrak's sole preferred shareholder. The final director, named internally, was appointed by the other eight members of the board. *Id.* at 385, 397-98.

[29] *Id.* at 397.

[30] *Id.* at 398.

[31] *Id.* at 399.

[32] *See id.* at 398 (Amtrak "is established and organized under federal law for the very purpose of pursuing federal governmental objectives, under the direction and control of federal governmental appointees.").

[33] Answering Br. at 11.

7

the exclusive duty of the state.[34] In *Manhattan Community Access Corporation v. Halleck*, the Supreme Court considered whether a non-profit private corporation operating a public access cable channel was a state actor under Section 1983.[35] Employing the "public function" test, the Court determined that a private actor may be considered a state actor if it "exercises 'powers traditionally exclusively reserved to the State.'"[36] In other words, the government "must have traditionally *and* exclusively performed the function."[37] Because the Court found that the operation of public channels on a cable system was not a traditional and exclusive governmental function, it concluded that the private corporation was not a state actor.

Although Dufresne alleges that firefighting is "a public duty,"[38] he has cited no authority for that proposition, and more importantly, he has failed to cite any authority, statutory or otherwise, indicating that the State has *traditionally* and *exclusively* performed that function in Delaware. Moreover, the U.S. District Court for the District of Delaware has held that firefighting in Delaware is not a traditional and exclusive governmental function.[39] This Court similarly holds that firefighting is not a traditional and exclusive public function in this State, and therefore that Defendants cannot be deemed state actors on this basis.

---

[34] *See Manhattan Cmty. Access Corp. v. Halleck*, -- U.S. --, 139 S.Ct. 1921, 1928-29 (2019) ("It is not enough that the federal, state, or local government exercised the function in the past, or still does. And it is not enough that the function serves the public good or the public interest in some way. Rather, to qualify as a traditional, exclusive public function within the meaning of our state-action precedents, the government must have traditionally *and* exclusively performed the function.") (citing *Rendell-Baker*, 457 U.S. at 842).

[35] *Id.* at 1926.

[36] *Id.* at 1928 (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 352 (1974)).

[37] *Id.* at 1929 (emphasis in original) (citing *Rendell-Baker*, 457 U.S. at 842; *Jackson*, 419 U.S. at 352-53; *Evans v. Newton*, 382 U.S. 296, 300 (1966)).

[38] Second Am. Compl. at ¶ 34.

[39] *See Ehart v. Odessa Fire Co.*, 2005 WL 348311, at *4 (D. Del. Feb. 2, 2005) (in finding that a volunteer fire company was not a state actor pursuant to Section 1983, court noted that "with the exception of the City of Wilmington, firefighting in Delaware has never been traditionally the exclusive prerogative of the State.").

Several federal courts in neighboring jurisdictions have held that a volunteer fire company is a state actor for purposes of Section 1983. Three of these courts based their holdings upon a finding that firefighting is a traditional and exclusive public function under the laws of the respective states involved and upon other factors not present in this case. A fourth decision is distinguishable on its facts.

In *Mark v. Borough of Hatboro*, a member of a Pennsylvania volunteer fire company had set fire to the plaintiff's property,[40] and the plaintiff subsequently brought an action under Section 1983 against the fire company.[41] The U.S. Court of Appeals for the Third Circuit, in holding that the fire company was a state actor, found that firefighting was a duty of the Commonwealth of Pennsylvania pursuant to well-established Pennsylvania case authority.[42] The court also relied upon additional factors, *i.e.*, that the fire company had a contract with the borough to provide fire protection, rendering it the borough's "duly appointed fire company"; that the borough had control over the fire company's budget; and that the borough had imposed a fire tax, which provided funding for the company.[43]

In *Eggert v. Tuckerton Volunteer Fire Company No. 1*, a New Jersey volunteer fire company had limited the plaintiff's involvement with the company following the plaintiff's publication of an article criticizing the company's response to a residential fire.[44] The plaintiff filed suit, alleging violation of several of his constitutional rights,[45] and the U.S. District Court for the District of New Jersey determined that the defendant volunteer fire company was a state actor for purposes

---

[40] 51 F.3d 1137 (3d Cir. 1995), *cert. denied*, 516 U.S. 858 (1995).

[41] *Id.* at 1140.

[42] *Id.* at 1145.

[43] *Id.* at 1147, 1148. The court's holding that the fire company was a state actor was also *dicta* because the court subsequently found that the firefighter-arsonist was not acting under the fire company's direction, and therefore was not a state actor, when he committed the arson. *See id.* at 1151.

[44] 938 F.Supp. 1230, 1232 (D.N.J. 1996).

[45] *Id.* at 1232-33.

of Section 1983.[46]  The *Eggert* court noted that New Jersey state courts consistently recognize that firefighting is a governmental function,[47] and further that New Jersey statutory authority endows municipalities with the authority to contract with volunteer fire companies to perform firefighting services and to supervise and control the membership of contracted fire companies,[48] indicating that the New Jersey legislature "inten[ded] to attribute the actions of a volunteer fire company to the state."[49]  Additionally, New Jersey law expressly states that in discharging their duties, the fire company's members are exercising a governmental function.[50]

In *Gibson v. Hurleyville Fire Company No. 1*, the plaintiff was denied membership with a New York volunteer fire company, and subsequently filed a complaint against the company alleging violation of her rights under the U.S. Constitution.[51]  The U.S. District Court for the Southern District of New York held that the fire company was a state actor because it was performing a governmental function.[52]  In support of this decision, the court relied upon prior authority from the Second Circuit providing that firefighting in Connecticut and New York is an exclusive governmental function.[53]

The courts in *Mark*, *Eggert*, and *Gibson* all based their decisions, at least in part, on a finding that in the states involved, firefighting is the duty or function of the government, *i.e.*, a traditional and exclusive governmental function.  That is not the case in Delaware.  In addition, the *Mark* and *Eggert* decisions relied upon state-mandated or government-initiated contractual relationships between governmental bodies and fire companies, and governmental control over fire companies' budgets

---

[46] *Id.* at 1240.
[47] *Id.* at 1238.
[48] *Id.* at 1237-39.
[49] *Id.* at 1238.
[50] *Id.* at 1237.
[51] 1 F.Supp.2d 329, 331 (S.D. N.Y. 1998).
[52] *Id.*
[53] *Id.*

and membership, that is not reflected in the allegations of the Second Amended Complaint.

In *Goldstein v. Chestnut Ridge Volunteer Fire Company*, the U.S. District Court for the District of Maryland relied neither upon the public function test, nor upon general findings of state control over and involvement with volunteer fire companies, in reaching its conclusion that volunteer fire companies in Maryland are state actors pursuant to Section 1983.[54] Nonetheless, *Goldstein* is distinguishable because the court held that, after making the initial determination of state actor status, a court must engage in a "second inquiry" regarding whether "the conduct at issue in the litigation peculiarly relates to the defendant's performance of a public function."[55] In this case, Dufresne has advanced no claim that the alleged conduct at issue, including the termination of his membership and the defamation, were related to the alleged public function of firefighting.[56]

Finally, although no Delaware state court has considered the issue of whether volunteer fire companies and their agents are state actors for purposes of Section 1983, a Delaware court, specifically the Court of Common Pleas, has determined that a fire company's representative cannot be considered a state actor in the criminal context. In *State v. Walker*, the defendant filed a motion to suppress arguing that a deputy fire chief of a Delaware volunteer fire company who had conducted a traffic stop of the defendant was a state actor.[57] The court rejected this argument, holding that the deputy chief was not a state actor because there was no evidence that the deputy chief had acted under the direction of law enforcement in conducting the

---

[54] 984 F.Supp. 367, 372 (D. Md. 1997), *aff'd,* 218 F.3d 337 (4th Cir. 2000), *cert. denied,* 531 U.S. 1126, 1152 (2001).

[55] *Id.* at 373.

[56] *See Ehart*, 2005 WL 348311, at *5 n. 6 (*Goldstein* distinguishable because plaintiff had not alleged that he had been terminated for communications related to defendants' purported public function).

[57] 2018 WL 5255302, at *2 (Del. Com. Pl. Oct. 16, 2018).

stop.[58]  Although the court's decision does not explicitly mention Section 1983, resolves a criminal matter, and is from a lower court, it nevertheless is significant because it underscores the fact that no Delaware court has found that a volunteer fire company or one of its members is a state actor.

### 3. Defendants are not state actors because the State was not involved with the conduct that Dufresne alleges in the Second Amended Complaint.

Under a third set of tests utilized by the U.S. Supreme Court, the reviewing court must determine whether the State was involved in the challenged conduct, namely, whether (1) the State compelled or coerced the challenged conduct;[59] (2) there was a "close nexus" between the State and the challenged action;[60] or (3) there was "joint participation" between the State and the private entity.[61]

First, in *Blum v. Yaretsky*, the Court applied, among others, the compulsion or coercion test to determine whether a private nursing home participating in Medicaid was a state actor.  Once a patient in the nursing home was admitted and receiving Medicaid, physicians employed by the nursing home would decide whether the patient should be moved to a facility providing a different level of care.[62]  In response to the transfers, some of the patients filed suit against the state in an attempt to hold the government officials controlling Medicaid liable for the actions of the nursing home physicians.[63]  Even though the nursing home physicians used a state-created form to evaluate patients and render decisions regarding transfers, the Court nevertheless found that the physicians were not state actors because, among other

---

[58] *Id.* at *2-3.
[59] *See Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982) ("[O]ur precedents indicate that a State normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State.").
[60] *Brentwood Acad.*, 531 U.S. at 295.
[61] *Lugar*, 457 U.S. at 941.
[62] *Blum*, 457 U.S. at 995.
[63] *Id.* at 995-96.

factors, "the physicians, and not the forms, make the decision about whether the patient's care is medically necessary."[64] Thus, the Court found that the state did not compel or coerce the challenged conduct.[65]

Here, Dufresne has failed to allege that the State coerced, compelled, or even encouraged Defendants to terminate his membership, report his alleged misconduct to the police, or make defamatory statements about him.[66] Therefore, this test does not support a finding that the Fire Company or its Board members were state actors.

Second, in *Brentwood Academy v. Tennessee Secondary School Athletic Association*, the Court applied the "close nexus" test to determine whether an athletic association was a state actor.[67] Although the athletic association was a private entity, eighty-four percent of its members were employees of the state acting in their official capacities.[68] The Court held that "state action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'"[69] In other words, if there is "pervasive entwinement" between the private entity and the public institution, then the reviewing court may properly apply constitutional standards to the private entity.[70] This requirement is designed to ensure that a private entity is held to constitutional standards only when the state is "responsible" for the challenged conduct.[71] The Court concluded that the athletic association was a state actor because the members who were state officials were so numerous that they essentially managed and controlled the association through their decisions.[72]

---

[64] *Id.* at 1006.

[65] *Id.* at 1005.

[66] *See Rendell-Baker*, 457 U.S. at 841 (state action not found where decisions of state-regulated private entities "were not compelled or even influenced" by state regulations).

[67] 531 U.S. at 290-91.

[68] *Id.* at 291.

[69] *Id.* at 295 (quoting *Jackson*, 419 U.S. at 351).

[70] *Id.* at 298.

[71] *Id.* at 295 (citing *Blum*, 457 U.S. at 1004).

[72] *Id.* at 298-99.

In this case, Dufresne fails to allege a close nexus between the State and the challenged action sufficient to demonstrate a pervasive entwinement between the Fire Company and the State, nor does he allege that the State effectively controls the Board, the Fire Company, or its membership. Furthermore, there is no contention that the State, like the public membership of the athletic association in *Brentwood*, "overwhelmingly perform[s] all but the purely ministerial acts by which the [Fire Company] exists and functions."[73] Indeed, there is no claim that the State plays any role in the management or day-to-day activity of the Fire Company. Finally, Dufresne does not allege that the State was responsible for the misconduct alleged in his Complaint. Therefore, it would be improper to hold Defendants liable for their alleged actions under a constitutional rubric to which they were not bound.

Third, in *Lugar v. Edmonson Oil Company*, the Court applied the "joint participation" test to determine whether a private creditor utilizing a state statute to obtain a debtor's property was a state actor.[74] The statute required the creditor to obtain a writ of prejudgment attachment and then have the sheriff enforce the writ.[75] The Court noted that the legislature had pre-ordained the deprivation procedure followed by the creditor and that the sheriff had assisted with the deprivation,[76] and held that this constituted "joint participation" and therefore that the creditor was a state actor.[77]

However, *Lugar* is unpersuasive because the Court limited its holding to the context of prejudgment attachment – a factual scenario not present here.[78] Even

---

[73] *Id.* at 300.

[74] *Lugar*, 457 U.S. at 924; *see also id.* at 941 ("[W]e have consistently held that a private party's joint participation with state officials in the seizure of disputed property is sufficient to characterize that party as a 'state actor' for purposes of the Fourteenth Amendment.").

[75] *Id.* at 924.

[76] *Id.* at 924, 937, 940-41.

[77] *Id.* at 942.

[78] *Id.* at 939 n. 21; *see also Revis v. Meldrum*, 489 F.3d 273, 289-90 (6th Cir. 2007) (noting that the Sixth Circuit has only applied *Lugar* to cases involving prejudgment attachment or garnishment proceedings).

assuming *arguendo* that the holding of *Lugar* applies to the facts of this case, Dufresne has failed to allege that the State acted jointly with Defendants to perform the alleged misconduct. Indeed, unlike in *Lugar*, Defendants did not follow a statutory scheme in their alleged actions against Dufresne, and the State did not assist Defendants in committing the alleged actions. Therefore, the "joint participation" test does not warrant a finding that Defendants were state actors.

### 4. Even if Defendants were heavily regulated or financed by the State, or both, it would not compel the conclusion that the Fire Company was a state actor.

The U.S. Supreme Court has repeatedly found that extensive regulation or financial support of a private entity by the state does not in and of itself render the private entity a state actor. In *Jackson v. Metropolitan Edison Co.,* the Court found that a heavily-regulated private utility company was not a state actor.[79] In *Rendell-Baker v. Kohn,* the Court found that a heavily-regulated private school that had received at least ninety percent of its funding in the years preceding the events in question, and ninety-nine percent in one year, was not a state actor.[80] In *Blum*, the Court found that a heavily-regulated private nursing home that was primarily funded by the state was not a state actor.[81]

In this case, although Dufresne alleges State regulation of the Fire Company, he fails to allege regulation at the level present in *Jackson*, *Rendell-Baker*, and *Blum*. However, even if this were present, it would not render Defendants state actors, as extensive government regulation alone is not dispositive in determining whether the

---

[79] *Jackson*, 419 U.S. at 358-59; *see also id.* at 350-51 (private business subject to extensive and detailed state regulation is not necessarily a state actor).
[80] *Rendell-Baker*, 457 U.S. at 832, 843.
[81] *Blum*, 457 U.S. at 995, 1011.

entity in question is a state actor.[82]  Additionally, even if the Fire Company were almost entirely funded by the State, this would not render it a state actor.[83]

### 5. The Supreme Court's decision in *Burton v. Wilmington Parking Authority*[84] does not support Dufresne's argument that Defendants are state actors.

In *Burton*, the Wilmington Parking Authority – a public body[85] – leased space to a private coffee shop in a building that was demonstrably public.[86]  The Wilmington Parking Authority had agreed to make repairs to the premises and furnish named utilities in exchange for annual rent.[87]  Subsequently, the coffee shop refused to serve the appellant, Mr. Burton, on the basis of his race.[88]  The plurality of the Court held that the State had "so far insinuated itself into a position of interdependence" with the coffee shop that it must be considered "a joint participant" in the alleged actions.[89]

Here, *Burton* is unpersuasive because its holding is confined to its own facts.[90]  Because the distinctive facts of *Burton* are not reflected in the allegations of the Second Amended Complaint – Dufresne does not allege that the Fire Company

---

[82] *Jackson*, 419 U.S. at 350-51; *Rendell-Baker*, 457 U.S. at 841-42; *Blum*, 457 U.S. at 1004.

[83] *See Ehart*, 2005 WL 348311, at *3 (citing *Rendell-Baker*, 457 U.S. at 841, where virtually all of school's income came from the government, yet the receipt of these funds did not automatically render the school's actions those of the state).

[84] 365 U.S. 715 (1961).

[85] *Id.* at 717.

[86] *See id.* at 720 ("Upon completion of the building, the Authority located at appropriate places thereon official signs indicating the public character of the building, [and] flew from mastheads on the roof both the state and national flags.").

[87] *Id.*

[88] *Id.* at 716.

[89] *Id.* at 725; *see Jackson*, 419 U.S. at 357 (referring to facts of *Burton* as "symbiotic relationship").

[90] *See Burton*, 365 U.S. at 725-26 ("[T]he conclusions drawn from the facts and circumstances of this record are by no means declared as universal truths on the basis of which every state leasing agreement is to be tested. . . . [W]hat we hold today is that when a State leases public property in the manner and for the purpose shown to have been the case here, the proscriptions of the Fourteenth Amendment must be complied with by the lessee as certainly as though they were binding covenants written into the agreement itself."); *accord Jackson*, 419 U.S. at 358 (*Burton*'s holding "limited to lessees of public property"); *see also Crissman v. Dover Downs Entm't Inc.*, 289 F.3d 231, 244 (3d Cir. 2002) (*Burton* limited to its facts).

leased property from the government – *Burton* does not support a finding that Defendants are state actors. Moreover, even if the facts of *Burton* were reflected in Dufresne's allegations, its holding would be inapplicable because Dufresne has failed to allege facts sufficient to support a finding that the State has "insinuated itself into a position of interdependence" with the Fire Company, where the financial success of the Fire Company directly benefits the State in a way similar to the situation in *Burton*. Likewise, the pleadings at bar do not demonstrate a "symbiotic relationship" between the Fire Company and the State because Dufresne has failed to indicate such a relationship.

### 6. While the weight of Supreme Court precedent establishes that Defendants are not state actors, *Ehart* is also persuasive.

In *Ehart*, the plaintiff filed suit pursuant to Section 1983, claiming that the Odessa Fire Company had violated his constitutional rights when its board of directors terminated him from membership.[91] The U.S. District Court for the District of Delaware, upon review of the complaint, granted the defendants' motion for summary judgment, finding that the Odessa Fire Company had not acted under color of state law for purposes of Section 1983 when it terminated the plaintiff's membership.[92]

In support of its decision, the *Ehart* Court utilized the three-element test set forth in *Rendell-Baker* to determine whether an entity had acted under color of state law and was therefore subject to liability under Section 1983: "(1) the extent to which the State funded the [entity in question]; (2) the extent to which the challenged

---

[91] *Ehart*, 2005 WL 348311, at *1-2.
[92] *Id.* at *4, *7. The court in *Ehart* converted the motion to dismiss to one for summary judgment because the defendants referred to matters outside the pleadings. *Id.* at *2. While *Ehart* was a summary judgment decision, and the decision in this case, by contrast, is based only upon the pleadings, the legal principles from *Ehart* are transferable, including its analysis of *Rendell-Baker*.

activity was regulated by the State; and (3) whether the [entity in question] performed a public function."[93]

Applying this test to the present case, the first element regarding public funding is not apparent. In *Ehart*, the court relied upon facts in the record that revealed the Odessa Fire Company's funding; the Second Amended Complaint, by contrast, fails to address the sources and levels of the Fire Company's funding. However, looking to *Rendell-Baker*, the court in *Ehart* noted that even if virtually all of a private entity's income comes from the state, that does not render the private entity a state actor.[94] Likewise, as explained *supra*, if the pleadings in the present case had alleged that nearly all of the Fire Company's funding had come from the State of Delaware, this fact would not compel the conclusion that the Fire Company is a state actor for purposes of Section 1983.

The second and third elements of the *Rendell-Baker* test as applied by the court in *Ehart*, however, are applicable. Regarding the second element, Dufresne has failed to allege that the challenged conduct, *i.e.*, the violation of his due process rights, was, in the words of the *Ehart* court, "compelled or even influenced by any state regulation."[95] Regarding the third element, firefighting is not the exclusive prerogative of the State of Delaware and is therefore not a public function.[96]

---

[93] *Ehart* at *3. The Court in *Rendell-Baker* also utilized a fourth factor, namely whether the entity in question had a "symbiotic relationship" with the State. *Rendell-Baker*, 457 U.S. at 842-43. Here, as in *Ehart*, there is no symbiotic relationship between the fire company at issue and the State of Delaware. *Ehart*, 2005 WL 348311, at *3 n. 3; *see supra* discussion pp. 16-17.

[94] *Id.* at *3.

[95] *Id.* at *4. Dufresne has alluded to "[s]everal statutes [that] provide Delaware's volunteer fire companies such as Camden-Wyoming with particular benefits and powers," Second Am. Compl. at ¶ 38, and "enhance[] and direct[] the organization of volunteer fire companies," *id.* at ¶ 37. Nonetheless, just as the plaintiff in *Ehart* was unable to point to any Delaware statutes "regulat[ing] the Fire Company's decision to terminate [the] plaintiff's membership," *Ehart*, 2005 WL 348311, at *4, Dufresne has pointed to no statutes compelling or influencing the challenged actions in this case.

[96] *See Ehart*, 2005 WL 348311, at *4 (with exception of City of Wilmington, firefighting in Delaware not traditional, exclusive prerogative of State).

*Ehart* is also persuasive pursuant to choice of law principles. A federal court exercising diversity jurisdiction must follow the substantive law of the state in which it sits.[97] Consequently, it follows that the inverse of this rule applies – a state court reviewing a federal legal issue should employ federal substantive law in the district where it sits.[98]

### 7. The Fire Company's designation as a "governmental entity" under the Act does not render Defendants state actors.

Dufresne argues that because the Act, which provides tort immunity to "governmental entities,"[99] defines a volunteer fire company as such an entity,[100] the State of Delaware has acknowledged that the Fire Company is in fact a governmental body subject to liability under Section 1983.[101] This argument is not persuasive. Notably, the statutory scheme of the Act demonstrates that its purpose was to grant *immunity* in certain circumstances to a number of entities, including volunteer fire companies and their employees, not to declare that a fire company and its employees are *state actors* for purposes of Section 1983.

---

[97] *Collins v. Mary Kay, Inc.*, 874 F.3d 176, 181 (3d Cir. 2017); *accord Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938) (federal court sitting in diversity must apply substantive law of state in which it sits because "[t]here is no federal general common law").

[98] Delaware courts look to pronouncements of federal courts as to federal substantive law. *See Atlas Mut. Ben. Ass'n v. Portscheller*, 46 A.2d 643, 646 (Del. 1945) (Delaware courts should apply federal law to questions of due process under the U.S. Constitution); *accord Klein v. Sunbeam Corp.*, 93 A.2d 732, 733 (Del. Super. 1951) (due process issues should be resolved under federal law); *see also Red Maple Properties v. Zoning Comm'n of Town of Brookfield*, 610 A.2d 1238, 1242 n. 7 (Conn. 1992) (state court, upon review of Section 1983 claim, adopted approach of Second Circuit because "[i]t would be a bizarre result if this court adopted the [state court] analysis when in another courthouse, a few blocks away, the federal court, being bound by the Second Circuit rule, required the [federal court] test. We do not believe that when Congress enacted the concurrent jurisdiction provision of § 1983 that it intended to create such a disparate treatment of plaintiffs depending on their choice of a federal or state forum.") (internal quotations and citations omitted).

[99] 10 *Del. C.* § 4011(a).

[100] *Id.* § 4010(2).

[101] Answering Br. at 10.

Furthermore, as demonstrated *supra*, the application of the legal principles developed by U.S. Supreme Court jurisprudence demonstrates that Defendants should not be designated as state actors, particularly since there is no allegation in the Second Amended Complaint that the State was in any way involved with the challenged actions. The General Assembly's designation of the Fire Company as a "governmental entity" cannot overcome this fact.

According to the *Lebron* Court, the fact that Congress had designated Amtrak a private corporation in the enabling legislation did not compel the conclusion that Amtrak was a nongovernmental entity:

> [I]t is not for Congress to make the final determination of Amtrak's status as a Government entity for purposes of determining the constitutional rights of citizens affected by its actions. If Amtrak is, by its very nature, what the Constitution regards as the Government, congressional pronouncement that it is not such can no more relieve it of its First Amendment restrictions than a similar pronouncement could exempt the Federal Bureau of Investigation from the Fourth Amendment.[102]

In other words, it is up to the courts, not the legislature, to determine whether an entity is a state actor, and thus subject to constitutional requirements, based upon the tests promulgated by the Supreme Court.

The same logic applies here in reverse: the General Assembly cannot transform private entities into arms of the government, or state actors of any type, by labeling them "governmental entities" for purposes of the Act's provision of immunity. The U.S. Supreme Court has never held that if a state statute has labeled a private entity a governmental entity, then the private entity, *ipso facto,* is a state actor for purposes of Section 1983. In other words, Supreme Court jurisprudence requires that the court review the relevant characteristics and actions of the private entity in question and determine whether the state was involved in the control of the

---

[102] 513 U.S. at 392.

entity and in the challenged conduct itself, not that the court simply determine whether the private entity was labeled "governmental" under a state statute.

In *Eggert*, the court noted that the provision of governmental immunity to volunteer fire companies by New Jersey state law supported the finding that the volunteer fire company was a state actor.[103] However, the *Eggert* Court's holding, as noted *supra*, was based on New Jersey law, including case authority recognizing firefighting as a public function and statutory provisions allowing municipalities to contract with fire companies for the provision of firefighting services and placing members under the supervision of municipalities.[104] Here, by contrast, firefighting is not a public function, and Dufresne has cited no Delaware law that provides for contractual relationships between a municipality and a volunteer fire company, or for supervision of the company's membership by a contracting municipality. Therefore, *Eggert* does not point to a different conclusion on this issue.

## B. The Fire Company, and the individual Defendants in their official capacities, are immune from Dufresne's defamation claims under the Act.[105]

In Count III of the Second Amended Complaint, Dufresne has asserted state-law claims for defamation against Defendants. The Act states that "all governmental entities and their employees shall be immune from suit on any and all tort claims seeking recovery of damages,"[106] and it designates a "registered volunteer fire compan[y]" as a "[g]overnmental entity" for purposes of the Act.[107] The Act further provides a non-exclusive list of claims for which a governmental entity is immune

---

[103] 938 F.Supp. at 1239.

[104] *Id.* at 1237-39.

[105] Dufresne has failed to respond in his written submissions to Defendants' arguments regarding Defendants' immunity under the Act from Dufresne's defamation claims. Nevertheless, the Court will provide a full legal analysis of this issue for the parties' benefit and for purposes of potential appellate review.

[106] 10 *Del. C.* § 4011(a).

[107] *Id.* § 4010(2).

from liability.[108]  Finally, the Act carves out three limited circumstances in which a "governmental entity" may be liable for negligent acts or omissions causing property damage, bodily injury, or death.[109]

As noted *supra*, the Fire Company is designated as a "governmental entity" pursuant to the Act because it is a registered volunteer fire company.[110]  Therefore, for purposes of the Act, Dufresne's defamation claim against the Fire Company is barred because it is a tort claim against a "governmental entity" and falls outside the exceptions to immunity enumerated in Section 4012.[111]  Indeed, even if one of the

---

[108] *See id.* § 4011(b) ("Notwithstanding § 4012 of this title, a governmental entity shall not be liable for any damage claim which results from:  (1) The undertaking or failure to undertake any legislative act, including, but not limited to, the adoption or failure to adopt any statute, charter, ordinance, order, regulation, resolution or resolve.  (2) The undertaking or failure to undertake any judicial or quasi-judicial act, including, but not limited to, granting, granting with conditions, refusal to grant or revocation of any license, permit, order or other administrative approval or denial.  (3) The performance or failure to exercise or perform a discretionary function or duty, whether or not the discretion be abused and whether or not the statute, charter, ordinance, order, resolution, regulation or resolve under which the discretionary function or duty is performed is valid or invalid.  (4) The decision not to provide communications, heat, light, water, electricity or solid or liquid waste collection, disposal or treatment services.  (5) The discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalines, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water, except as provided in § 4012(3) of this title.  (6) Any defect, lack of repair or lack of sufficient railing in any highway, townway, sidewalk, parking area, causeway, bridge, airport runway or taxiway, including appurtenances necessary for the control of such ways including but not limited to street signs, traffic lights and controls, parking meters and guardrails.").

[109] *See id.* § 4012 ("A governmental entity shall be exposed to liability for its negligent acts or omissions causing property damage, bodily injury or death in the following instances:  (1) In its ownership, maintenance or use of any motor vehicle, special mobile equipment, trailer, aircraft or other machinery or equipment, whether mobile or stationary.  (2) In the construction, operation or maintenance of any public building or the appurtenances thereto, except as to historic sites or buildings, structures, facilities or equipment designed for use primarily by the public in connection with public outdoor recreation.  (3) In the sudden and accidental discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalines and toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water.").

[110] *Id.* § 4010(2).  The Court takes judicial notice of the fact that the Fire Company is a registered fire company for purposes of the Act because this matter is not subject to reasonable dispute.  *See In re General Motors*, 897 A.2d at 169 ("The trial court may also take judicial notice of matters that are not subject to reasonable dispute.").

[111] *See Alexander v. Town of Cheswold*, 2007 WL 1849089, at *4 (Del. Super. June 27, 2007) (holding defendant governmental entity immune from plaintiff's defamation claim under the Act).

enumerated exceptions were involved here, Dufresne has not alleged property damage, bodily injury, or death.

The Act also bars Dufresne's claims against the individual Defendants to the extent they were acting as "employees" of the Fire Company. The Act defines an "employee" of a "governmental entity" as one who "act[s] on behalf of a governmental entity in any official capacity . . . including . . . volunteer firefighters and rescue squad members . . . ."[112] The Act provides for a limited exception to employee immunity for acts or omissions resulting in property damage, bodily injury, or death,[113] but as explained *supra*, Dufresne has not alleged such damages. Therefore, the individual Defendants are immune from liability for Dufresne's defamation claims except to the extent they were not acting on behalf of the Fire Company when they engaged in the challenged conduct.[114]

### C. Dufresne is not entitled to additional discovery before the Court renders a decision on Defendants' Motion.

Dufresne argues that he should be "given an opportunity to conduct Discovery to explore all possible connections that the State has to the Camden-Wyoming Fire Company which only can be revealed during the Discovery process."[115] The Court fails to see, however, how further discovery would assist Dufresne in resisting Defendants' Motion.

In reviewing this Motion, the Court has accepted the allegations of the Second Amended Complaint as true[116] and drawn all reasonable inferences in Dufresne's favor.[117] Dufresne makes no claim that the Fire Company is a governmental body

---

[112] 10 *Del. C.* § 4010(1).

[113] *Id.* § 4011(c).

[114] The Second Amended Complaint alleges that the individual Defendants "also made . . . defamatory statements on their own personal time unrelated to times they were acting on behalf of the Fire Company." Second Am. Compl. ¶ 9.

[115] Answering Br. at 15.

[116] This includes the statutory provisions referenced in paragraph thirty-eight of the Second Amended Complaint.

[117] *Savor*, 812 A.2d at 896-97.

created by the State, and he has conceded that no special act of the General Assembly has granted the State appointment powers over the Board.[118] Furthermore, he has not cited any case or statutory authority establishing that firefighting is a traditional and exclusive public function in Delaware. Finally, he has not alleged that the State compelled or even participated in the challenged conduct, or that there was a pervasive entwinement between government officials and the Fire Company of the type found in *Brentwood Academy*.

In short, the allegations of the Second Amended Complaint, even construed in Dufresne's favor, fail to demonstrate either control by the State over the Fire Company or involvement by the State in the alleged misconduct. Dufresne has provided no explanation of how additional inquiry into "possible connections" between the State and the Fire Company would assist him in filling that void. Accordingly, the Court will deny this request.

## IV. CONCLUSION

For the foregoing reasons, Dufresne cannot proceed with his Section 1983 claims against Defendants. Not only is the Fire Company not a governmental entity created and controlled by the State, but Dufresne has failed to establish that firefighting is a traditional and exclusive public function in Delaware, or that the State either compelled or participated in the challenged conduct, or that there was a pervasive entwinement between State officials and Defendants. In addition, the Act provides immunity to the Fire Company, and to the individual Defendants in their official capacities, from Dufresne's state law claims.

**WHEREFORE**, Defendants' Motion to Dismiss the Second Amended Complaint in Part is **GRANTED**. Counts I and II of the Second Amended Complaint are hereby dismissed. Count III of the Second Amended Complaint is dismissed as to Dufresne's claims against the Fire Company and as to his claims

---

[118] Answering Br. at 11.

24

against the individual Defendants in their official capacities. Dufresne may proceed against the individual Defendants under Count III to the extent that they were not acting on behalf of the Fire Company when (and if) they engaged in the alleged conduct.

**IT IS SO ORDERED.**

/s/ Noel Eason Primos
Judge

NEP/wjs
*Via File & ServeXpress*
oc:    Prothonotary
        Counsel of Record
        file